FILED UNDER SEAL

FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

2025 JAN 21 P 3:34

| | |
|---|---|
| XIONG LI,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br><br>THE UNINCORPORATED ASSOCIATIONS<br>IDENTIFIED IN SCHEDULE A,<br><br>　　　　　　Defendants. | Civil Action No. 3:25-CV-47 <s>1:24-CV-</s>_____ |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR
ENTRY OF A (1) TEMPORARY RESTRAINING ORDER
AND (2) ASSET RESTRAINING ORDER**

Plaintiff Xiong Li, by its undersigned counsel and pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65, submits this Memorandum of Law in Support of its *Ex Parte*[1] Motion for a Temporary Restraining Order ("TRO"), including an asset restraint (the "Motion"), an order to show cause as to why a preliminary injunction should not issue.

**I.      INTRODUCTION AND SUMMARY OF ACTION**

---

[1] On information and belief, all Defendants are foreign, particularly Chinese, individuals or companies with the means and the ability to transfer the assets contained in each of Defendant's respective Amazon.com accounts outside of this Court's jurisdictional reach. Once Defendants learn of this suit, it will create an incentive to transfer the assets. *Ex Parte* filing is warranted in this case in the interest of justice.

1

FILED UNDER SEAL

This action seeks to stop the online sale of knock-off goods by Defendants, as identified on Schedule A of the Complaint (collectively, the "Defendants"), which upon information and belief, the majority of which are originally manufactured in China. In the Verified Complaint, Plaintiff filed against Defendants for patent infringement. Plaintiff is the owner of U.S. Patent No. 12,082,559 B1 ("the '559 Patent") titled "Automatic Animal Door" ("the Patent-in-Suit") which issued on September 10, 2024. Compl. ¶ 1. The Patent-in-Suit protects the products of Plaintiff that are used as an automatic animal door, specifically, embodiments of the automatic animal door are used as an automatic chicken coop entryway. Plaintiff's commercial embodiments of the Patent-in-Suit are sold directly by Plaintiff to consumers through online sales platforms such as Amazon.com. Compl. ¶ 15. As alleged in the Complaint, the Defendants are importing, promoting, advertising, marketing, distributing, offering for sale, and selling automatic animal door products through Amazon.com that infringe the claims of the Patent-in-Suit. Compl. ¶ 37.

The Defendants are foreign-based entities that create webstores and product listings on Amazon.com for automatic animal doors all the while actually selling low-quality, unlicensed, infringing products packaged to unknowing consumers. Compl. ¶¶ 4, 5. Defendants knowingly and intentionally promote, advertise, distribute, have manufactured, import, offer for sale, and sell Defendants' Accused Products through out the United States, including Virginia and this Judicial District through online webstores using the seller identifies set forth in Schedule A to the Complaint. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope of their counterfeiting operation. Compl. ¶ 7. Plaintiff files this action to combat Defendants' illegal sales of the Plaintiff's goods, as well as to protect unknowing consumers from purchasing low- quality counterfeits over the Internet.

2

FILED UNDER SEAL

The *ex parte* TRO sought by Plaintiff is appropriate under the circumstances. The '559 Patent is presumed valid under 35 U.S.C. § 282. Defendants are causing irreparable harm to Plaintiff including erosion of Plaintiff's control of its patent rights, damage to the marker for automatic animal doors the embody the inventions claimed in the Patent-in-Suit, diminishment of Plaintiff's market share, and confusion to consumers. Monetary damages are inadequate to compensate Plaintiff for Defendants' infringement. The equities weigh in favor of Plaintiff. Plaintiff has invested significant resources developing, securing, maintaining, and enforcing the Patent-in-Suit. Any inconvenience that may impact Defendants' under an *ex parte* TRO is the mere result of their own unlawful infringement. An *ex parte* TRO further serves the consuming public by promoting the long-held public policy of favoring the protection of patent rights; providing incentive for other inventors and innovators to continue to develop new products with confidence that their intellectual property rights will be enforceable; and dispelling any confusion caused by Defendants counterfeit Accused Products in the marketplace.

The requested scope of the *ex parte* TRO relief is limited and appropriate. Plaintiff has made extensive efforts to identify the Accused Products sold by Defendants and crafted the Proposed Order for TRO to address only product listings that infringe upon '559 Patent. Defendants operate pseudo-anonymously in order to evade enforcement actions and operate primarily through online webstores, enabling them to transfer assets outside of a court's reach upon learning of legal action. An order restraining Defendants' assets is warranted under these circumstances because, unless Defendants' assets are restrained, Plaintiff will be unable to properly account for or collect the monetary damages caused by Defendants' infringement.

Additionally, to further Plaintiff's request for relief of a proper accounting, Plaintiff should be permitted to engage in expedited discovery to ascertain Defendants' banking and

3

FILED UNDER SEAL

payment operations. The requested discovery is appropriate to ascertain the full scope of the interconnected nature of Defendants and to prevent Defendants from concealing the identities of entities behind their multiple seller accounts, destroying evidence, shutting down seller accounts, and disappearing only to reemerge with different online seller accounts.

Accordingly, based on the evidence clearly demonstrating infringement by each Defendant, this Court should issue an *ex parte* TRO enjoining Defendants from their continued infringement as set forth in Plaintiff's Complaint.

## II.   STATEMENT OF FACTS

Plaintiff is the owner of the Patent-in-Suit and sells automatic animal doors on online platforms to U.S. customers. Plaintiff's manager is the inventor of the automatic animal door claimed in the Patent-in-suit. Plaintiff has sold the automatic animal doors under the Tiflev brand since February 8, 2023. Plaintiff has experienced substantial sales and growth due to the innovative and unique design of the automatic animal doors covered by the Patent-in-Suit. Compl. ¶ 13.

Plaintiff maintains quality control standards for all of its products sold under the Patents-in-suit. Genuine Plaintiff's Products are sold directly by Plaintiff to consumers through online sales platforms such as Amazon.com. Prior to the flood of Accused Products entering the market, sales of Plaintiff's Products via legitimate webstores represented a significant portion of Plaintiff's business. Compl. ¶ 15.

Plaintiff also directly sells, domestically and internationally, including within the Eastern District of Virginia ("Plaintiff's Products"), solar powered automatic animal doors that are commercial embodiments made under the Patent-in-Suit. As a result of the success of Plaintiff's Products, Defendants have flooded the online market with sales of Accused Products in violation of Plaintiff's intellectual property rights and have irreparably damaged, and are continuing to

irreparably damage, Plaintiff. Plaintiff has not authorized or licensed any party in the marketplace or named in this action to import, offer to sell, or sell products made according to the claims of the Patent-in-Suit. Compl. ¶ 14.

Many of the Accused Products are manufactured by factories based in China and sold wholesale either directly or through China-based e-commerce Internet Webstores. For example, sellers on Amazon.com purchase Accused Products in bulk from the factory or the Chinese e-commerce sites to sell on Infringing Webstores. Compl. ¶ 16.

The primary way in which Defendants advertise the sale of Accused Products on the Defendant Webstores is by infringing the Plaintiff's patent rights. After reviewing the Accused Products advertised for sale on the Defendant Webstores, Plaintiff confirmed that imitation knockoffs were being offered for sale to residents of the United States and the State of Virginia. Plaintiff also concluded that the Defendant Webstores are selling Accused Products based on a visual inspection of the products as they appear on, and were ordered from, the Defendants' Webstores, the price at which the Accused Products are being offered for sale, and because Defendants and the Webstores do not conduct business with Plaintiff and do not have the right or authority to use the Patent-in-Suit for any reason.

Defendants facilitate sales of Accused Products by designing the Webstore listings so that they appear to unknowing consumers to be authorized listings, outlet stores, or wholesalers selling Plaintiff's Products and accept payment in U.S. Dollars. It is estimated that infringers are responsible for millions of dollars in lost profits and the sale of hundreds of thousands of infringing products.

Due to the nature of Defendants' illegal activities, monetary damages cannot adequately compensate Plaintiff for ongoing infringement because monetary damages fail to address the loss

FILED UNDER SEAL

of control and damage to Plaintiff's reputation and goodwill.

Furthermore, monetary damages are difficult, if not impossible, to ascertain due to the inability to calculate measurable damage in dollars and cents caused to Plaintiff's reputation and goodwill by acts of infringement. Plaintiff's goodwill and reputation are irreparably damaged when Plaintiff's patent rights are misused on goods not authorized, produced or manufactured by the Plaintiff. This leads to brand confidence being damaged, resulting in loss of future sales and market share. The extent of harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable.

Defendants' illegal use of the patent rights of Plaintiff further irreparably harms Plaintiff because infringers like the Defendants take away Plaintiff's ability to control the nature and quality of illegal Products. Loss of quality control over goods bearing the Plaintiff's patented designs, and, in turn, loss of control over Plaintiff's reputation, is neither calculable nor precisely compensable.

Plaintiff is further irreparably damaged due to a loss of exclusivity of its patented products. When infringers use the Patent-in-Suit without authorization, the exclusivity of Plaintiff's products, as well as Plaintiff's brand's reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales.

Tactics used by Defendants to conceal their identities and the full scope of their infringing operations make it virtually impossible for Plaintiff to learn Defendants' true identities. Based on previous cases of Webstores that unlawfully use a brand owner's intellectual property rights to sell counterfeit products, when any advance notice of a lawsuit or request for injunctive relief is given to the owner or registrant of a Webstore involved in counterfeiting and infringement, the requested relief is rendered ineffective and meaningless, because counterfeiters

operate as a proverbial "moving target," beyond the effective reach of rights owners seeking to enforce their rights.

Plaintiff has been unable to uncover the true identities of individuals operating the Defendant stores since Amazon.com withholds this information from the public. Even if made public, many of these sellers use multiple fictitious names and addresses to regularly create new stores at least on the Amazon.com platform. This is a common practice to conceal identities so that the sellers can evade enforcement efforts.

Irreparable harm by Defendants' activities also comes from the fact that, if not enjoined, the sellers on Amazon.com can abscond with illegally procured funds from the Defendants' accounts, and the funds will be difficult if not impossible to impossible to recover once removed from Amazon.com.

Plaintiff will suffer immediate and irreparable injury, loss or damage if infringers are allowed to continue to infringe upon the Patent-in-Suit.

### III. THE COURT SHOULD FREEZE ACCOUNTS USED IN CONNECTION WITH DEFENDANTS' INFRINGING ACTIVITIES

Under Rule 65(b) of the Federal Rules of Civil Procedure, a court may issue a temporary restraining order without written or oral notice to a defendant where "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Here, each of the Defendants fraudulently promotes, advertises, offers to sell, and sells infringing and counterfeit goods using the Patent-in-Suit through the use of the Defendant Webstores on Amazon.com. The entry of a temporary restraining order is appropriate

FILED UNDER SEAL

because it would immediately enjoin Defendants from benefiting from their wrongful use of the Patent-in-Suit and preserve the status quo until such time as a hearing can be held. *See In re Vuitton et Fils S.A.*, 606 F.2d 1, 4 (2d Cir. 1979) (recognizing that *ex parte* temporary restraining orders are "indispensable to the commencement of an action when it is the sole method of preserving a state of affairs in which the court can provide effective final relief"); *Microsoft Corp. v. John Does 1-27*, No. 10-cv-00156-LMB-JFA [Dkt. No. 23] (E.D. Va. Feb. 22, 2010) (granting an *ex parte* TRO upon finding that the "Court's ability to grant effective final relief will result from the sale, transfer, or other disposition or concealment by Defendants of the domains at issue...if the Defendants receive advance notice of this action."); *Dell Inc. v. Belgium Domains, LLC*, No. 07-22674, 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007) (finding ex parte relief particularly compelling where counterfeiting activity "is in electronic form and subject to quick, easy, untraceable destruction by Defendants").

In the absence of an *ex parte* temporary restraining order, Defendants will have not only a strong incentive, but the opportunity to move any assets away from U.S.-based financial institutions, including Amazon.com, to accounts outside the jurisdiction of this and other U.S. courts. Federal courts have recognized that, in circumstances such as these, providing notice to defendants "appears to serve only to render fruitless further prosecution of the action." *See In re Vuitton et Fils S.A.*, 606 F.2d 1, 5 (2d Cir. 1979); *Time Warner Enter. Co. v. Doe*, 876 F. Supp. 407, 410-11 (E.D.N.Y. 1994); *Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often rendered useless if notice is given to the infringers"). To prevent Defendants from circumventing any relief this Court may provide, the Court should grant Plaintiff's *ex parte* motion for a temporary restraining order. Such relief has regularly been

granted by this Court, as well as from other U.S. district courts around the country. *See, e.g., Order, Volkswagen Group of America, Inc. v. Unincorporated Ass'ns*, No. 1:19-cv-01574 (E.D. Va. Dec. 20, 2019), ECF No. 21; Order, *Juul Labs, Inc. v. Unincorporated Ass'ns*, No. 1:19-cv-01126 (E.D. Va. Sept. 13, 2019), ECF No. 25 (granting TRO directing PayPal to freeze all funds involving defendants' accounts).

A. **Standard for Temporary Restraining Order**

"The standard for granting either a TRO or a preliminary injunction is the same." *Velasquez v. Velasquez*, No. 1:14CV1688 JCC/TRJ, 2014 WL 7272934, at *3 (E.D. Va. Dec. 15, 2014) (citing *Moore v. Kempthorne*, 464 F. Supp. 2d 519, 525 (E.D. Va. 2006)). In deciding whether to grant a TRO or preliminary injunction, the Fourth Circuit follows the test established by the United States Supreme Court in *Winter v. Natural Resources Defense Council, Inc.*, whereby the plaintiff must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346 (4th Cir. 2009) (quoting *Winter*, 555 U.S. 7, 20 (2008)).

The Fourth Circuit has also adopted the four factors in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006), which state a plaintiff seeking an injunction must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. Id. at 391.

Applying the *Winter* and *eBay* factors to this case compels grant of Xiong Li's motion and: (1) an order temporarily freezing all Amazon.com accounts linked to Defendants and

therefore likely to be used in connection with Defendants' counterfeiting; and (2) an order authorizing limited, expedited discovery allowing Plaintiff to identify each of the Defendants and inspect their financial account(s).

Plaintiff is likely to succeed on the merits as it has established facts supporting its claims that Defendants use the Patents-in-suit without authorization, in connection with the importation, sale, offering for sale, distribution, or advertising of knockoff or infringing goods.

If the *ex parte* Motion is not granted, Plaintiff will suffer irreparable harm. The Fourth Circuit has recognized that "irreparable injury regularly follows from trademark infringement." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 939 (4th Cir. 1995); *Toolchex, Inc. v. Trainor,* 634F. Supp. 2d 586, 592 (E.D. Va. 2008) (granting a preliminary injunction based on the likelihood infringement will continue); *see also Vuitton v. White*, 945 F.2d 569, 576 (3d Cir. 1991) (recognizing "'immediate and irreparable injury' will not ordinarily be a difficult showing in a counterfeit case" and reversing the district court's denial of a seizure order).

Plaintiff was the first company to manufacture and launch the unique automatic animal door and applied for and was granted U.S. Patents for its efforts. Defendants are copying Plaintiff's patented product line thereby creating a false association in the minds of consumers between the Defendants' Webstores are sponsored by or endorsed by Plaintiff. The entry of a temporary restraining order is appropriate because it will immediately stop the Defendants from benefiting from their wrongful use of the Patents-in-Suit and preserve the status quo until such time as a hearing can be held.

In the absence of a temporary restraining order without notice, the Defendants can and likely will modify content, change hosts, and move any assets from U.S.-based bank accounts

including Amazon. com banking and payment system accounts. In addition, courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Plaintiff respectfully requests that this Court issue the requested *ex parte* temporary restraining order.

Here, it is a virtual certainty that if any of the Defendants learn about this action before the requested relief is granted, Defendants will expeditiously transfer all funds from their Amazon.com accounts, thereby disrupting the status quo and denying Plaintiff of a means to collect upon any judgment it is likely to obtain. Moreover, none of the Defendants will suffer any cognizable harm if the Court grants Plaintiff's motion. As this Court has recognized, the ability of an infringer to reap the profits of prior infringement should not be considered when balancing the hardships. *See Toolchex, Inc. v. Trainor*, 634 F. Supp. 2d 586, 593 (E.D. Va. 2008). The public interest also weighs heavily in favor of the Court granting a temporary restraining order. Through their actions, Defendants have deceived and continue to deceive consumers into believing that they are purchasing Plaintiff's genuine products when, in fact, they are receiving unauthorized and unlicensed knockoffs, which is creating confusion among consumers. The public will benefit from deterring such activity and preserving the availability of judicial remedies.

### B. **Plaintiff Will Likely Succeed on the Merits**

Plaintiff is likely to succeed on the merits of its claims for patent.

#### 1. **Patent Infringement**

Plaintiff is likely to prevail on its claims for patent infringement pursuant to 35 U.S.C.

FILED UNDER SEAL

§101 et. seq. and §§271, 281, 283, 284, & 285 inclusive, for infringement of the Patent-in-Suit. The Patent-in-Suit protects the products of Plaintiff that are used as an automatic animal door. *See* Compl. ¶ 17; Exhibit A.

Defendants in Schedule A of the Complaint have, under 35 U.S.C. §271(a), directly infringed, and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the Patents-in-suit by making, using, testing, selling, offering for sale and/or importing into the United States the Accused Products.

The claims of the '559 Patent are directed to an automatic animal door. The '559 Patent contains twenty claims directed to the device, where claim 1 is the sole independent claim. Claim 1 of the '559 Patent recites:

> 1. An automatic animal door, comprising:
> a first door column as a monolithic construction,
> a second door column as a monolithic construction,
> a top plate
> a door plate, and
> a driving mechanism;
> wherein the first door column defines a first groove extending along a length direction thereof; the second door column is opposite to the first door column and is spaced apart from the first door column; the second door column defines a second groove extending along a length direction thereof; the first groove is opposite to the second groove;
> where in the top plate is connected with a top end of the first door column and a top end the second door column; the top plate, the first door column, and the second door column are connected which define an entrance;
> wherein the driving mechanism is disposed on the top plate; the driving mechanism is connected with the door plate to drive the door plate to move along the first groove and second groove;
> wherein the door plate is disposed between the first door column and the second door column; a first side of the door plate facing the first door column is clamped in the first groove; a second side of the door plate facing the second door column is clamped in the second groove; the door plate is moveable along the first groove and the second groove;
> wherein the first door column defines a first opening communicated with the first groove; the first opening is defined on the top end of the first door column; the second door column defines a second opening communicating with the second

groove; the second opening is defined on the top end of the second door column; wherein the top plate comprises a base plate portion, a first limiting portion, and a second limiting portion integrally formed; the base plate portion and the door plate are sequentially disposed in a thickness direction of the automatic animal door; the first limiting portion is disposed on the top end of the first door column, the first limiting portion blocks a portion of the first opening; the first limiting portion prevents the first protruding portion from separating from the first groove; the second limiting portion is disposed on the top end of the second door column; the second limiting portion prevents the second protruding portion from separating from the second groove.

Plaintiff has conducted a detailed analysis, establishing and confirming that Defendants' Accused Products directly infringe claims of the Patent-in-Suit. The Accused Products are all automatic animal doors. Figure 4 of the '559 Patent illustrates an embodiment of the automatic animal door with the driving mechanism.



FIG. 4

Figure 5 of the '559 Patent illustrates the tope plate of the automatic animal door which connects to the driving mechanism to drive the doorplate along the first groove and the second groove.

13

FILED UNDER SEAL



**FIG. 5**

Each Accused Product is an automatic animal door that includes all of the claimed elements of at least one claim of at least one of the Patent-in-Suit. The draft exemplary claim charts in Exhibits C-G of the Complaint illustrates how the elements of the claims read on examples of each Defendant's Accused Products. Plaintiff has downloaded Webstore pages and images from the Webstores of each Defendant and can produce these to the Court if desired.

For the foregoing reasons, Plaintiff is likely to prevail on its claims for patent infringement.

### C. **Without *Ex Parte* Relief Plaintiff Will Likely Suffer Irreparable Harm**

Defendants' unauthorized use of the Patent-in-Suit has and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. The extent of the harm to Plaintiff's reputation and goodwill

14

and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002) *Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis*, 35 F.3d 1134, 1140 (7th Cir. 1994) ("[S]howing should be granted preliminary relief. Plaintiff should be granted preliminary relief.) If Defendants learn of this action before their assets are frozen, they almost certainly will seek to transfer their assets from any accounts in the United States, depriving Plaintiff of the ability to obtain an accounting or to otherwise obtain relief under 15 U.S.C. § 1117.

This Court, as well as other courts, has found that an asset freeze is justified under similar circumstances due to the likelihood that a counterfeiter will dissipate funds in accounts that are subject to the jurisdiction of U.S. courts and thereby deprive the Plaintiff of an adequate remedy. *See, e.g., Volkswagen Group of America, Inc. v. Unincorporated Ass'ns*, No. 1:19-cv-01574 (E.D. Va. Dec. 20, 2019), ECF No. 21 (granting an asset freeze for Defendants PayPal accounts under similar facts). For these same reasons, Plaintiff will suffer irreparable harm if Defendants' accounts are not frozen.

### D. The Balance of Equities Tips Overwhelmingly in Favor of Maintaining the Status Quo By Freezing Defendants' Assets

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the irreparable harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm that Plaintiff will suffer if relief is denied. *TY, Inc.*, 237 F.3d at 895.

On information and belief, Defendants have profited through the sale of knockoff products, which Defendants primarily purchase and import from factories in China, which infringe Plaintiff's patent rights. Compl. ¶¶ 14, 16. It is a virtual certainty that if any of the Defendants learn about this action before the requested relief is granted, the Defendants will expeditiously transfer all funds from their Amazon.com accounts, thereby disrupting the status quo and denying Plaintiff a means to collect upon any judgment it is likely to receive.

Thus, the balance of equities tips decisively in Plaintiff's favor. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

### E. The Public Interest Weighs Heavily in Favor of Granting Injunctive Relief

The Supreme Court's decision in *eBay Inc. v. MercExchange, LLC* articulated a rule for granting injunctions that firmly embedded in the common law a public interest consideration. In *eBay*, the Court rejected the Federal Circuit's "general rule" that "a permanent injunction will issue once infringement and validity have been adjudged." *MercExchange, LLC v. eBay, Inc.*, 401 F.3d 1323, 1338 (Fed. Cir. 2005). The Court instead implemented what is called "the traditional four-factor test [for injunctions]," one factor of which requires the patentee to affirmatively show whether "the public interest would . . . be [served or] disserved by a permanent injunction. *Id.* at 391. Here, the public interest would be served because Defendants' patent infringement, by at least a) preventing the sale of knockoff infringing dog wash bath tub products, whereby cheaper, lower quality products enter the market, b) the public interest of upholding patent rights to exclude others from importing, offering, and selling patented products and inventions, and c) preventing confusion among consumers of the origin of the goods since the infringement of Plaintiff's patent rights is integral to Plaintiff's reputation and public confidence in authentic automatic animal doors.

The Fourth Circuit has recognized a "public interest in making the infringing misconduct unprofitable." *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 176 (4th Cir. 2006). It follows that an order preserving the status quo and ensuring that Defendants cannot shelter their improperly obtained profits from the reach of U.S. courts is in the public interest. In this case, the injury to the public is patent, and the injunctive relief which Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff requests that this Court issue a temporary restraining order freezing the assets of each of the Defendants' Amazon.com accounts, and grant such further relief as this Court deems proper.

Date: January 21, 2025

Respectfully submitted,

/s/ Erik N. Lund
Erik N. Lund (VSB No. 95877)
elund@dnlzito.com
Tel: 703-261-9084
Joseph J. Zito (*pro hac pending*)
jzito@dnlzito.com
Tel. (202) 466-3500
DNL ZITO
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
Fax: (703) 997-7534

*Attorneys for Plaintiff*